IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MANUEL SALAS,

                     Plaintiff,                       OPINION AND ORDER

     v.                                        09-cv-237-wmc[1]

GREGORY GRAMS, LORI ALSUM,
JAMES GREER, GLORIA MARQUARDT,
CYNTHIA THORPE, DALIA SULIENE,
R.N. KETARKUS, PAUL PERSSON
and STEVE HELGERSON,

                     Defendants.

Plaintiff Manuel Salas filed this lawsuit pursuant to 42 U.S.C. § 1983, claiming that defendants Gregory Grams, Lori Alsum, James Greer, Gloria Marquardt, Cynthia Thorpe, Dalia Suliene, R. N. Ketarkus, Paul Persson and Steve Helgerson violated his Eighth and Fourteenth Amendment rights to privacy because (1) his medical visits were conducted in the dayroom, and (2) Health Service Request forms were not properly sealed. On his Eighth Amendment claim , Salas also maintains that defendants Grams, Alsum, Marquardt, Suliene, Thorpe and Greer failed to protect him from self harm. On April 15, 2010, defendants filed a motion for summary judgment. (Dkt.#110.) Salas's opposition to the motion was originally due on May 17, 2010 but was granted an extension until June 1, 2010 to file his materials in opposition. The court granted this extension despite plaintiff's failure to make a showing of good cause and only after warning plaintiff that no further extensions would

---

[1] This case was reassigned to Judge William Conley pursuant to a March 31, 2010 administrative order.

be granted. (Dkt. #147.) Nevertheless, a week *after* his materials were due under the extended deadline, he filed another motion for an additional extension which was promptly denied for lack of good cause. (Dkt. #150.) In the August 26, 2009 attachments to the Preliminary Pretrial Conference Order, Salas was informed that if he did not put into dispute a fact proposed by the moving party, the court would conclude that the fact was undisputed. "Procedure to be Followed on Motions for Summary Judgment" attached to the August 26, 2009, Preliminary Pretrial Conference Order, dkt. #39, at 19. Accordingly, the court accepts as undisputed defendants' Proposed Findings of Fact and concludes as a matter of law that defendants did not violate Salas's constitutional rights. Defendants' motion for summary judgment, therefore, will be granted. Defendants recent motion for entry of judgment (dkt. #151) will be denied as moot.

UNDISPUTED FACTS

**I. Parties**

At all times material to this action, plaintiff Manuel Salas was confined in the segregation area at the Columbia Correctional Institution in Portage, Wisconsin. Defendant Gregory Grams is the warden at that institution. Defendant Lori Alsum was the Health Services Unit manager at the institution from July 8, 2007 to December 5, 2009 at the institution. Defendant Dalia Suliene was employed as a doctor and defendants Paul Ketarkus, Paul Persson and Steven Helgerson were employed as nurses at the institution.

Defendant James Greer is the Director of the Bureau of Health Services at the

Department of Corrections.  Defendant Gloria Marquardt is the Department of Corrections

Health Information Supervisor/HIPAA Compliance Officer.  Defendant Cynthia Thorpe is

the Health Services Nursing Coordinator for the Department of Corrections.

## II.  Dayroom Medical Appointments

The disciplinary segregation area at the Columbia Correctional Institution has a large

open area referred to as a dayroom.  Health Services Unit staff conduct certain types of

medical appointments with inmates because the Health Services unit has space limitations.

Further, by conducting appointments in the dayroom, security is enhanced and security staff

resources are preserved.  Using the dayroom for some appointments alleviated some of the

Health Services Unit congestion and facilitates health care being provided to a greater

number of inmates on a more expedient basis.

Salas had the following six medical visits in the day room:

- August 13, 2008 visit with Dr. Suliene: Salas was escorted to dayroom to be examined for a lump in his left testicle.  Dr. Suliene requested that he take off his pants so that she could examine his testicle.  Salas informed her that he did not want the exam conducted in the dayroom.  Suliene suggested doing the exam in the bathroom and Salas refused.  Suliene never examined Salas's testicle in the dayroom, but later examined it in the Health Services Unit on August 29, 2008.

- August 18, 2008: Nurse Helgerson attempted to draw blood from Salas in the dayroom.  Salas refused to have his blood drawn and challenged the practice of drawing blood in the day room.

- September 8, 2008: Helgerson took Salas in the interview part of the dayroom to draw his blood.  Salas refused to have his blood drawn because the tube holder fell to the floor.  Helgerson reassured Salas that the tube holder did not need to be sterile.

- November 3, 2008: Salas was escorted to the dayroom to receive a TB skin test.

3

Although no other inmates were in the area, Salas refused to have the test.

- December 23, 2008: Nurse Persson went to Salas's cell because she had been informed that he had a cut on his forearm. Persson asked Salas come to the dayroom so she could treat the self-inflicted cuts on his arm. Salas refused to be treated in the dayroom.

- December 24, 2008: Salas was brought to dayroom for treatment for self-inflicted cuts on his arm. Salas demanded to be treated somewhere else but Nurse Ketarkus refused to move the treatment location. Salas chose to be treated in the dayroom.

After Salas filed inmate complaints concerning the use of the dayroom for medical visits, a privacy screen was purchased on November 23, 2008 and installed shortly after that date. Further, Salas was advised that there was a hand washing facility within close proximity to the interview room where lab draws and TB tests were performed.


III.  **Health Services Request Slips**

In order to receive medical treatment for any non-emergency health care services, inmates are required to fill out and submit a Health Services Request Form (HSR). The forms are forwarded to the Health Services Unit for action. Once the Health Services Unit has taken action on the form, the form is returned to the inmate's unit and delivered to the inmate by the correctional officer. The forms are folded by Health Services staff so the content is not visible, and the form is taped or closed using a non-metal, "staple-less" stapler. Salas alleges that correctional officers have access to his medical information because the forms are not returned to him in sealed envelopes. He does not, however, allege which correctional officer have seen his medical information.

4

**IV.  Failure To Protect Salas From Self-Harm**

On October 24, 2008, while Salas was in observation status, he attempted suicide by overdosing on Quetiapine.  He was taken to the hospital, given charcoal and kept overnight for observation.  In the eight visits that Salas had with a psychologist in the two months before the October 24 attempt, he did not report any suicidal or homicidal ideation.

On December 23, 2008, when Salas reported that he was thinking of harming himself, he was put in observation status.  Later on December 23 and 24, 2008, Salas cut himself.


OPINION

Under Fed. R. Civ. P. 56, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party.  *Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).  The party that bears the burden of proof on a particular issue, nonetheless, may not rest on its pleadings, but must affirmatively demonstrate, through the proposal of specific facts, that there is a genuine issue of material fact that requires a trial.  *Hunter v. Amin*, 583 F.3d 486, 489 (7th Cir. 2009) (internal quotation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The applicable substantive law will dictate which facts are material.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  Further, a factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party. *Anderson*, 477 U.S. at 248; *Roger Whitmore's Auto. Serv., Inc. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The court's function in a summary judgment motion is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). In this case, there is no genuine issue for trial.

## I. Right to Medical Privacy

In this circuit, "[w]hether prisoners have any privacy rights in their prison medical records and treatment appears to be an open question." *Massey v. Helman*, 196 F.3d 727, 742 n.8 (7th Cir. 1999) (citing <u>*Anderson v. Romero*</u>, 72 F.3d 518, 522-23 (7th Cir. 1995)). In *Anderson,* 72 F.3d at 523, the court of appeals could not "find any appellate holding that prisoners have a constitutional right to the confidentiality of their medical records," but noted in dictum that the cruel and unusual punishment clause of the Eighth Amendment might protect against a state's dissemination of "humiliating but penologically irrelevant details of a prisoner's medical history."

Courts in the Second and Third Circuits have found prison staff violated an inmate's privacy right by purposefully disseminating intensely private medical information. <u>*Doe v. Delie*</u>, 257 F.3d 309, 317 (3d Cir. 2001); *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999). Relying on these cases, as well as the dictum in *Anderson*, a district court in the Eastern District of Wisconsin decided that until the Seventh Circuit ruled otherwise, it was appropriate to analyze a prisoner's claim to medical privacy under both the Eighth and

6

Fourteenth Amendments:

> In this court's opinion, an equally plausible interpretation of the Seventh Circuit court's dictum [in *Anderson*] is that the court was not foreclosing the Fourteenth Amendment as a basis for providing inmates with a constitutional right to the confidentiality of his or her medical information, but rather, it was recognizing that, irrespective of such a right, certain medical disclosures could be actionable if they rose to the level of cruel and unusual punishment under the Eighth Amendment.

*Simpson v. Joseph*, 2007 WL 433097, at *13 (E.D. Wis. 2007).

Ultimately, the geneal standards for claims under the Eighth and Fourteenth Amendments are similar. In order to succeed on a claim under the Eighth Amendment's cruel and unusual punishment clause, the plaintiff "must show that the state has created risk or inflicted pain pointlessly." *Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir. 1995); *see also Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (holding same in strip search case). In other words, the plaintiff must show "calculated harassment unrelated to prison needs." *Id.* at 147 (citing *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)); *see also Whitman v. Nesic*, 368 F.3d 931, 934-35 (7th Cir. 2004) (question is whether any legitimate penological reason for privacy invasion). Under the Fourteenth Amendment, an inmate's constitutional right to privacy is not violated if the policy or practice at issue is "reasonably related to legitimate penological interests." *Delie*, 257 F.3d at 317 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *Powell*, 175 F.3d at 112 (citing *Turner*, 482 U.S. at 89).

While Salas claims that his medical visit in the dayroom violated his right to the privacy, the record shows Salas was actually *treated* in the dayroom on only one occasion. On December 24, 2008, Nurse Ketarkus treated a cut on his arm. On the other occasions,

7

Salas consistently refused treatment.  As discussed above, it is undisputed that by conducting certain appointments in the dayroom, security was enhanced and security staff resources were preserved.   Because of these legitimate penological objectives, Salas's medical information admittedly *may* have been overheard by others.  But plaintiff has not shown that any medical information was actually disseminated, much less disseminated for the purposes of causing him embarrassment or humiliation.  Thus. Salas's rights to medical privacy were not violated.

Further, Salas claims that his right to medical privacy was violated because the health service request forms were not placed in sealed envelopes.  It is undisputed that the forms were folded over and sealed in some way to keep the content from being revealed.  Most importantly, Salas has not stated that any defendant correctional officer ever read one of his Health Service Request form.  He has not, therefore, shown how the policy concerning the forms violated his rights to medical privacy under the Eighth or Fourteenth Amendment, and defendants are entitled to judgment in their favor on these claims.

## II.  Failure to Protect Claim

Salas claims that defendants Grams, Alsum, Marquardt, Suliene, Thorpe and Greer failed to protect him from harming himself when he became suicidal as a result of his concerns about his medical privacy.  In *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court held that the Constitution requires prison officials to protect prisoners from "substantial risks] of serious harm."  When prison officials are aware of a substantial risk of

harm -- even risks of self-harm such as suicide -- they must take reasonable steps to prevent that harm. *Bordello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006); *Woodward v. Correctional Medical Services*, 368 F.3d 917, 928 (7th Cir. 2004); *Peace v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002); *Sanicle v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001); *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 258 (7th Cir. 1996). Failure to do so constitutes deliberate indifference and violates an inmate's Eighth Amendment rights. *Cavalieri v. Shepard*, 321 F.3d 616, 620-21 (7th Cir. 2003) (prison officials also have a duty to protect inmates from self-harm); *Sanicle*, 266 F.3d at 734; *see also Mombourquette v. Amundson*, 469 F. Supp. 2d 624 (W.D. Wis. 2007) (failure to protect inmate from suicide constitutes deliberate indifference).

To succeed on a claim that defendants violated his rights by disregarding a substantial risk of self-harm, plaintiff must prove that defendants (1) knew of a "substantial risk" that he would harm himself; and (2) disregarded that risk by failing to take reasonable measure to abate it. *Farmer*, 511 U.S. at 844.

Salas has presented no evidence that any of the defendants knew that he was suicidal and disregarded that risk. On the contrary, the undisputed facts indicate that prior to October 24, 2008 Salas had not reported suicidal thoughts. Further, when he reported such thoughts on December 23, 2008, he was placed in observation status for his protection. Salas has failed to show that defendants were deliberately indifferent to a substantial risk of self harm. Defendants are, therefore, entitled to judgment in their favor on this claim as well.

9

ORDER

IT IS ORDERED that:

(1)     The motions for summary judgment filed by defendants Gregory Grams, Lori
        Alsum, James Greer, Gloria Marquardt, Cynthia Thorpe, Dalia Suliene, R. N.
        Ketarkus, Paul Persson and Steve Helgerson, dkt. #110, are GRANTED,

(2)     Defendants' motion for entry of judgment, dkt. #151, is
        DENIED as moot.

(3)     The clerk of court is directed to enter final judgment in favor of defendants
        and close this case.

        Entered this 13th day of July, 2010.

                            BY THE COURT:

                            /s/
                            _____

                            WILLIAM M. CONLEY
                            District Judge

10